DAVID J. BECHT, SBN 104208
MICHAEL SACHS, SBN 235048
ADAMS | NYE | SINUNU | BRUNI | BECHT LLP
222 Kearny Street, Seventh Floor
San Francisco, California 94108-4521
Telephone: (415) 982-8955
Facsimile: (415) 982-2042

Attorneys for Plaintiff
KATHLEEN IMMEDIATO

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

**C 07 3008**

KATHLEEN IMMEDIATO, individually and as real party in interest to the ESTATE OF RALPH IMMEDIATO

Plaintiff,

vs.

UNITED STATES DEPARTMENT OF VETERAN'S AFFAIRS, CENTER FOR REHABILITATION AND EXTENDED CARE

Defendant.

CASE NO.

COMPLAINT FOR DAMAGES FOR
1) PROFESSIONAL NEGLIGENCE
2) WRONGFUL DEATH
3) SURVIVAL
4) WILLFUL MISCONDUCT
5) FRAUD
6) CONSTRUCTIVE FRAUD
7) ELDER ABUSE

Plaintiff alleges:

## JURISDICTION

1. The jurisdiction of this Court is based upon 28 U.S.C. § 1346 and 42 U.S.C. § 233.

2. Plaintiff has fully compiled with all prerequisites to jurisdiction in this court having exhausted all administrative remedies required by law. Attached as Exhibit "A" is a copy of the claim Plaintiff filed with the Veterans Affairs Department on June 30, 2006. To date, the Veterans Affairs Department has offered no disposition of this claim. Under 28 U.S.C. §2675(a), the failure of an agency to make a final disposition of a claim within six months after it is filed shall be deemed a final denial.

1.

**INTRADISTRICT ASSIGNMENT**

3. Pursuant to Civil L. R. 3-2(c) and (d) assignment to the San Francisco Division is proper as a substantial part of the events or omissions which give rise to the claims occurred in Contra Costa County.

**GENERAL ALLEGATIONS**

4. KATHLEEN IMMEDIATO ("Plaintiff") is the widow of RALPH IMMEDIATO, now deceased, and is entitled to succeed to the ESTATE OF RALPH IMMEDIATO.

5. At or about the times alleged herein, the decedent RALPH IMMEDIATO ("Decedent") was a resident of the State of California and over 65 years of age. Decedent was an "elder" as that term is defined by section 15610 of the Welfare and Institutions Code. As an elder, decedent was entitled to the benefits and protections afforded by the Elder Abuse and Civil Protection Act.

6. At all relevant times herein mentioned, Defendant UNITED STATES DEPARTMENT OF VETERAN'S AFFAIRS, CENTER FOR REHABILITATION AND EXTENDED CARE (CREC) was doing business as a residential care facility, providing care to elderly and infirm individuals, located in Martinez, California.

7. On June 30, 2004, Decedent was accepted for a thirty day "respite" residency at CREC. At the time of his acceptance, Decedent was afflicted with Parkinson's disease, possible dementia and post-traumatic stress disorder and was in need of assistance with activities of daily living. Moreover, Decedent previously had prostate cancer which necessitated a prostatectomy and urostomy. As a result, Decedent was particularly susceptible to urinary tract infections.

8. In accepting Decedent for residence, Defendant agreed to provide, among other things, notification to Plaintiff and other appropriate persons or agencies of Decedent's needs, continuous observation of Decedent's physical and mental condition, assistance with activities of daily living. Defendant further agreed to take steps to transfer Decedent if Defendant was no longer in a position to properly care for him.

9. Defendant also had the duty of care to, among other things, (1) provide their residents with regular observation of their physical condition as well as monitoring their activities to

insure good general health, well being and safety; (2) reappraise their residents to note any significant changes in physical or mental condition; and (3) employ staff members with the skill and knowledge required for necessary resident care, and who are able to recognize early signs of illness and the need for professional help.

10. At the time of Decedent's admission to CREC, a urinalysis indicated the presence of a urinary tract infection. With knowledge that urinary tract infections, if untreated, can quickly lead to sepsis and death, and with notice of the presence of a urinary tract infection, Defendant consciously elected to provide no treatment for Decedent's condition. When Decedent's condition quickly deteriorated, Defendant consciously and willfully chose an inadequate course of treatment, a course of treatment which Defendant persisted in administering despite obvious indications which Defendant understood to indicate the development of sepsis, deteriorating physical condition and the ineffectiveness of the chosen course of treatment.

11. Despite Decedent's deteriorating physical condition, Defendant willfully refused to transfer Decedent to an appropriate acute care facility notwithstanding that 1) Plaintiff and Decedent's family repeatedly requested such transfer; and 2) Defendant was consciously aware that Decedent's condition had deteriorated to such extent that Defendant could no longer provide adequate medical intervention. On July 29, 2004, Decedent died of sepsis, a condition that was the direct result of Defendant's negligence and reckless disregard for Decedent's health.

## FIRST CAUSE OF ACTION
[Professional Negligence]

12. Plaintiff realleges paragraphs 1 through 11 and incorporates them herein by reference as though set forth in full.

13. Because the Decedent was a resident of CREC, Defendant had common law duties and other duties under federal and state regulations, designed for the protection and benefit of residents, such as Decedent, to protect them from abuse and neglect and to provide housing, social support and to provide assistance with the activities of daily living.

14. Moreover, by taking Decedent as a resident, Defendant agreed to abide by the regulations enacted for his benefit, including monitoring Decedent's health, reporting conditions and

3.

changes in his physical and mental health and determining whether Defendant could continue to provide appropriate care. Failure to perform these duties constitutes negligence.

15. Defendant acted negligently in its care of the Decedent. Such negligence includes, but is not limited to the following:

- Failing to hire and maintain competent staff;
- Failing to adequately train employees;
- Failing to provide Decedent with adequate care and supervision;
- Failing to monitor Decedent's condition;
- Failing to report changes in Decedent's mental and /or physical condition;
- Failing to re-assess Decedent to determine whether Defendant was still in a position to adequately care for him;
- Failing to assist Decedent with activities of daily living; and
- Failing to properly and timely treat Decedent's medical conditions.

16. As a proximate result of Defendant's negligence, Decedent was hurt and injured in his health, strength, and activity, all of which injuries caused Decedent great mental, physical, and nervous pain and suffering, all to Decedent's general damage in an amount according to proof.

17. As a further proximate result of Defendant's negligence, Decedent and Plaintiff incurred medical and related expenses in an amount according to proof.

## SECOND CAUSE OF ACTION
### [Wrongful Death]

18. Plaintiff realleges paragraphs 1 through 17 and incorporates them herein by reference as though set forth in full.

19. Defendant's negligence, as set forth above, proximately and legally caused the death of Decedent on or about July 29, 2004.

20. As a proximate result of the negligence of the Defendant and the resulting death of the Decedent, Plaintiff has sustained pecuniary loss resulting from the loss of the society, comfort, attention and services of Decedent.

21.    As a further proximate result of the negligence of the Defendant, Plaintiff has incurred funeral and burial expenses.

### THIRD CAUSE OF ACTION

[Survival]

22.    Plaintiff realleges paragraphs 1 through 21 and incorporates them herein by reference as though set forth in full.

23.    Defendant's conduct, as set forth above, was willful and reckless. As a proximate result of the willful and reckless conduct of Defendant, Decedent was hurt and injured in his health, strength, and activity, all of which injuries caused decedent great mental, physical, and nervous pain and suffering prior to his death, all to Decedent's general damage in an amount according to proof.

24.    As a further proximate result of the willful and reckless conduct of Defendant, Decedent incurred medical and related expenses in an amount according to proof.

### FOURTH CAUSE OF ACTION

[Willful Misconduct]

25.    Plaintiff realleges paragraphs 1 through 24 and incorporates them herein by reference as though set forth in full.

26.    Defendant has willfully and regularly violated its duty of care as aforesaid.

27.    Defendant acted willfully and recklessly by, *inter alia* neglecting Decedent to the extent that he developed sepsis, and by failing to provide necessary assistance to obtain needed medical care.

28.    Defendant affirmatively represented to Decedent and Plaintiff that it would continuously observe and assess Decedent for any needs, medical or otherwise, and that Defendant would notify Plaintiff if any problem arose.

29.    Decedent was in Defendant's sole care and custody during the times herein alleged, and he was totally reliant upon Defendant for his health and safety. Because Defendant represented that it had the knowledge and ability to assist the decedent but failed to do so, Defendant is guilty of intentional and willful misconduct and has also violated California Penal Code section 368.

30. As a legal and proximate result of Defendant's willful misconduct, Decedent, at all times herein mentioned, was subjected to severe physical and mental pain and suffering, all to his general damage in an amount according to proof.

31. As a further legal and proximate result of Defendant's willful misconduct, Decedent and Plaintiff were forced to incur medical and related expenses, all to their special damage in an amount according to proof.

## FIFTH CAUSE OF ACTION

### [Fraud]

32. Plaintiff realleges paragraphs 1 through 31 and incorporates them herein by reference as though set forth in full.

33. Throughout Decedent's residency in Defendant's facility, Defendant repeatedly represented to Plaintiff and Decedent that Defendant had the ability to properly care for Decedent.

34. These representations made by Defendant were in fact false. The true facts were that Defendant did not have the ability to properly care for Decedent. Defendant, at all times, knew that it could not properly care for individuals in Decedent's condition.

35. When Defendant made these representations, it knew them to be false, and these representations were made by Defendant with the intent to induce Plaintiff and Decedent to continue Decedent's residency at Defendant's facility.

36. Plaintiff and Decedent, at the times that these representations were made by Defendant, believed Defendant's representations to be true, being unaware of their falsity. In reliance on these representations, Plaintiff and Decedent were induced to continue Decedent's residency at Defendant's facility. Had Plaintiff and Decedent known the true facts, they would not have taken such action. Plaintiff's and Decedents's reliance on Defendant's representations were justified because only Defendant knew what its abilities in caring for Decedent were.

37. As a proximate result of Defendant's fraud and the facts herein alleged, Decedent did not receive proper assistance for his physical conditions which greatly contributed to the Decedent's declining health, causing decedent to suffer the damages herein alleged.

6.

## SIXTH CAUSE OF ACTION

[Constructive Fraud]

38. Plaintiff realleges paragraphs 1 through 37 and incorporates them herein by reference as though set forth in full.

39. By virtue of the relationship between Decedent and Defendant, Defendant stood in a position of trust and a fiduciary duty existed relating to the care, comfort, safety and health of Decedent. Pursuant to said fiduciary duty, Defendant owed Decedent a duty of the utmost good faith and fairness in all matters pertaining to his health, care and comfort. Specifically, Decedent relied on Defendant to (1) regularly observe his physical condition as well as monitor his activities to ensure good general health, well being and safety, (2) reappraise him to note any significant changes, and (3) employ staff members who have the skill and knowledge required for Decedent's necessary care, and are able to recognize early signs of illness and the need for appropriate and timely medical intervention.

40. Defendant was aware of Decedent's reliance on Defendant for matters pertaining to his health, care and comfort, including his reliance on Defendant's observation, appraisals, and ability to recognize the need for appropriate and timely medical intervention. By virtue of the Decedent's reliance on Defendant, Defendant gained an advantage over Decedent in matters concerning Decedent's health, care and comfort.

41. Defendant, however, was not in the least interested in Decedent's health, care or comfort nor was it interested in properly assessing or monitoring Decedent's health or to provide professional help, but was motivated solely by Defendant's own self interest and desire to conceal its own negligence and recklessness.

42. As a direct and proximate result of Defendant's constructive fraud, Decedent was subjected to severe physical and mental pain and suffering, all to his general damage in an amount according to proof.

43. As a further direct and proximate result of Defendant's constructive fraud, Decedent was forced to incur medical and related expenses, all to his special damage in an amount according to proof.

7.

## SEVENTH CAUSE OF ACTION

[Elder Abuse]

44. Plaintiff realleges paragraphs 1 through 43 and incorporates them herein by reference as though set forth in full.

45. Defendant was a care custodian as that term is defined in subdivision (h) of section 15610 of the Welfare and Institutions Code.

46. At all times relevant to this action, Defendant had the care and custody of Decedent in that Decedent was completely dependent upon Defendant for his care, comfort, safety and health.

47. Defendant's conduct, as described herein constituted neglect as defined in Welfare and Institutions Code section 15610.57 in that by allowing Decedent to develop sepsis, Defendant failed to meet the degree of care that a reasonable person having the care and custody of Decedent would exercise.

48. Defendant acted with recklessness, oppression, fraud or malice in its neglect of Decedent.

49. As a direct and proximate result of Defendant's conduct, as herein alleged, Decedent was subjected to severe physical and mental pain and suffering, all to his general damage in an amount according to proof.

50. As a further direct and proximate result of Defendant's conduct, as herein alleged, Decedent was forced to incur medical and related expenses, all to his special damage in an amount according to proof.

51. Under Welfare and Institutions Code section 15657(a), Defendant is liable to Decedent for reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

1. For general damages according to proof;
2. For special damages according to proof;
3. For interest on all economic damages in the legal amount from the time incurred to the date of judgment;

8.

| | | |
|---|---|---|
| 1 | 4. | For reasonable attorney's fees; |
| 2 | 5. | For costs of suit herein incurred; and |
| 3 | 6. | For such other relief as the court deems proper. |

Dated: June 6, 2007

ADAMS | NYE | SINUNU | BRUNI | BECHT LLP

By: _____
MICHAEL SACHS
Attorneys for Plaintiff
KATHLEEN IMMEDIATO

Complaint (Immediato) (00137272).WPD

9.

COMPLAINT FOR DAMAGES

**EXHIBIT A**

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) |
|---|---|
| Martinez Outpatient Clinic and Center for Rehabilitation & Extended Care<br>150 Muir Road<br>Martinez, CA 94553<br><br>*Veterans Affairs Dept.* | Claimant: Ms. Kathleen Immediato; 3806 Drybread Road, Cottonwood, CA 96022<br>Personal Representative: David Becht<br>Adams Nye Sinunu Bruni Becht LLP<br>222 Kearny Street, 7th Floor, San Francisco, CA 94108 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>3/25/1923 | 5. MARITAL STATUS<br>Widowed | 6. DATE AND DAY OF ACCIDENT<br>7/8/2004    Thursday | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Please see attached additional page.

*[Stamp: REC'D REGION COUNSEL JUN 30 4 47 PM '06]*

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)
None

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please see attached additional page.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Mary Rank, NP<br>Ingrid Kwee, M.D., Tom Tillostson, MSW, Herbert Monie, M.D., Liz Smith, RN | Center for Rehabilitation & Extended Care; 150 Muir Road, Martinez CA 945453 |
| Kathleen Immediato, Laura Immediato | 3806 Drybread Road, Cottonwood, CA 96022 |

12. (See instructions on reverse.)    AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| $0.00 | $500,000.00 | $500,000.00 | $1,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) *[signature] Attorney for Claimant* | 13b. Phone number of person signing form<br>(415) 982-8955 | 14. DATE OF SIGNATURE<br>6/26/2006 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109    NSN 7540-00-634-4046    STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

| INSURANCE COVERAGE |
|---|

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☒ No

None

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?
☐ Yes
☐ No
Full Coverage ☐
Deductible ☐

17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

None

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

None

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95   BACK

## Form 95 Attached Additional Pages

**(8) and (10)**

Ralph Immediato entered the Martinez Outpatient Clinic and Center for Rehabilitation & Extended Care (CREC) on June 30, 2004. After screening to assure that he did not suffer from any condition beyond the scope of the skilled nursing facility, he was admitted.

CREC performed a urinalysis on Ralph on July 1, 2004. The results indicated elevated BUN (31) and creatinine levels (1.8)--both indicative of a UTI. In addition, the urine sample was described as "strong smelling" and containing white sediment. The latter are indicative of a relatively advanced infection (as bacteria reproduces and dies, they emit a strong ammonia smell). Finally, the urine sample contained white blood cells and bacteria, again indicative of a UTI.

On July 1, Mary Rank, a nurse practitioner at CREC, noted the above results and added her impression of "colonization" of bacteria. She ordered a Culture and Susceptibility (a test to determine which of the available antibiotics are most effective for the particular bacterial infection. However, other than the C & S, nurse Rank *did nothing more*, indicating her plan to "monitor."

No repeat urinalysis was performed until July 8. Moreover, this second urinalysis was not conducted according to a planned or scheduled monitoring plan; by July 8 Ralph was agitated and confused. In addition, he was suffering from neck pain (indicative that sepsis had already set in). On July 8, Ralph's BUN was up to 49. By July 9, his Creatinine level was 1.9 (creatinine above 2.0 is indicative of kidney failure).

Finally, on July 8, CREC began *oral* antibiotics. By this time, the treatment was truly "too little, too late." Of course, antibiotics should have begun on July 1. Moreover, once treatment was so belatedly started, the clear choice would have been administration via IV. Over the following week, the CREC staff noted that the oral antibiotics were proving ineffective. However, IV administration was not begun until July 14, shortly before Ralph was finally transferred to the Redding Medical Center at his family's insistence. On July 13, CXRs indicated infiltrates in Ralph's lungs.

On July 29, Ralph died at home from sepsis.00120747.WPD

**(12d)** Inclusive of attorney fees pursuant to Government Code section 12965(b)